DEMAREST *vs.* THE MAYOR, &c. of the city of New York.

By the act of 1850 the city inspector, of the city of New York, was empowered to appoint health wardens, with and by the consent of the board of aldermen.    This provision was not repealed or nullified by the amended charter of 1857.

The city inspector has not power to remove a health warden, without the concurrence of the board of aldermen.

Health wardens are not subject to removal as clerks, under the 21st section of the amended charter of 1857, which provides that the heads of departments shall have power to appoint and remove the chiefs of bureaux and clerks in their respective departments.

THE office of health warden has existed for many years, in the city of New York.    By the act of 1844, (*Laws of 1844, p.* 469,) the watch department of the city, as then organized, was abolished, and with it the offices of health.

warden, fire warden, &c. and a new police department was created. Captains of police were thereby made health wardens. (§ 8.) By the act of 1846, (*Laws of* 1846, *p.* 403,) the police department was reorganized, the officers before mentioned, with others, were abolished, and, in lieu thereof, certain police offices were created. By the charter of 1849, (*Laws of* 1849, *p.* 278,) the city government was reorganized, and various departments and bureaux were created. The heads of departments were elected by the people ; the heads of bureaux were appointed by the heads of departments, with the consent of the board of aldermen. The common council were empowered to establish such other bureaux as they might deem the public interests to require. By title 3, of the act of 1850, relative to the public health in the city of New York, (*Laws of* 1850, *p.* 607,) the office of health warden was again created, and the city inspector was authorized to appoint, with and by the consent of the board of aldermen, so many health wardens as the common council should direct. The common council authorized the appointment of one for each ward. The health wardens are, by this act, made subject to the supervision and control of the city inspector. In 1853 the common council reorganized the city inspectors' department—creating, among other things, a bureau of sanitary inspection, and providing that the chief officers thereof should be the superintendent of sanitary inspection and the health wardens. They also provided that the health wardens might, for cause, be removed from office by the city inspector. (*Pro. of both Boards, vol.* 21, *p.* 144.) By the charter of 1857, (1 *Laws of* 1857, *p.* 874,) a radical change was made in the manner of appointment of subordinate officers in the city government; and for the purpose of making the heads of departments responsible in some measure for the manner in which the business of their departments was managed, it was provided (§ 21) that the heads of departments should have power to appoint and remove the chiefs of bureaux and clerks in their respective departments.

By section 82, page 885, the ordinance of 1853, above named, is continued in force. In 1856 the plaintiff was appointed to the office of health warden of the ninth ward, by the city inspector, with the consent of the board of aldermen. On the 30th of July, 1859, Daniel E. Delavan, then city inspector, removed the plaintiff from office for cause, and on the 1st of August, 1859, appointed Samuel Reed to the position by an appointment in writing. Reed qualified on the 2d of August, and entered immediately upon the discharge of the duties of the office, and received the salary of the office from that time. The plaintiff was not recognized as health warden after the 1st of August. Though aware of this action of the city inspector, the plaintiff claimed that he was *de jure* health warden until the appointment of his successor should be confirmed by the board of aldermen. Several others making a similar claim, the city inspector, to obviate further questions, sent in the names of his appointees to the board of aldermen on the 30th December, 1859, who confirmed the appointments. This suit was brought by the plaintiff to recover the salary of the office from the 1st of August to December 30, 1859. The plaintiff had judgment below, and the defendants appealed.

*H. H. Anderson,* for the appellants.

*Geo. W. Morton,* for the respondent.

*By the Court,* CLERKE, J.   I think the judgment in this case should be affirmed, for the reasons stated by me at special term, in the following opinion :

The question to be determined in this case is, whether the city inspector has power to remove a health warden without the concurrence of the board of aldermen. By the act of 1850, the city inspector is empowered to appoint health wardens, with and by the consent of the board of aldermen. *Laws of* 1850, *p.* 607.)   Has this provision been repealed or

nullified by the legislature? I see nothing in the charter of 1857 which can be deemed to have that effect. Section 21, indeed, authorizes the city inspector, as well as the heads of departments of the municipal government, to remove the chiefs of bureaux and clerks in their respective departments; but it would be a very strained construction to say that this extends to health wardens. They are neither chiefs of bureaux nor are they clerks. The object of this section, I think, was to give the head of the department control over the persons connected with the direction and routine of the bureaux, and not over subordinates, whose duties were to be performed elsewhere, and at a distance from the office where the general direction and routine of the business of the department were to be transacted.

If there is any ordinance unrepealed of the common council, conferring on the city inspector the exclusive power of appointment of health wardens, it is void. Such an assumption of authority would be in contravention of the act of 1850, which, so far as I am able to ascertain, has not been repealed or nullified by any subsequent act of the legislature. I think, however, that the provision of the 7th section of the ordinance of 1853 no longer exists. Every section of that ordinance was incorporated in the revision of the ordinances adopted in 1859, and thus the latter was substituted in its place; withdrawing the power of removal from the city inspector alone.

The plaintiff, not having been legally removed, and his successor not having been legally appointed until the 30th of December, 1859, he is entitled to payment for his salary from July, 1859, to that day. Amount, with interest, to be computed.

LEONARD, J. The act of the legislature, (*Laws of 1850, p.* 607,) which created the office of health warden, authorized the city inspector to appoint so many, with the consent of the board of aldermen, as the common council or the board

of health should direct.    The question in this case is solved by determining whether any other body has the power of removing the health wardens from office.    In 1853, the common council created a bureau of sanitary inspection, which included a superintendent and the health wardens.    It was also provided by the city authorities that the city inspector, who is the head of the department which includes that bureau, might remove the health wardens for cause.    This ordinance was inconsistent with the rule of the common law in regard to the exercise of the power of removal.    The act of 1850 did not provide for the removal of the wardens in terms, but the appointing power had the power of removal by the common law, in the absence of any express provision of the statute law on the subject.    Whether the ordinance had the effect to change this rule of the common law, it is not necessary to discuss.

The amendments to the city charter, adopted by the legislature in 1857 (*Laws, p.* 885, § 32,) declared that the existing ordinances should apply to the department, when not inconsistent with the charter, until the common council should otherwise direct.    It is clear, I think, from these laws and the ordinance, that the city inspector had the power of removing the health wardens, from the time of the amendment of the city charter in 1857, until the revised ordinances were adopted in 1859.    The bureau of sanitary inspection, &c. is in the department of the city inspector.    (*Valentine's Corporation Ordinances, pp.* 157, 162.)    These ordinances provide ( § 44, *p.* 166,) that the health wardens shall be appointed as by law provided.    This ordinance recognizes the existence of the power of appointment under the act of 1850, because there is no other statute law on the subject, except so far as the amended charter affects it by implication, arising from the 32d section.    Nothing is said in the revised ordinances about removing the wardens.    None of the previous ordinances were continued in force under this revision, but it operated as a repeal of the former.

I am of the opinion, therefore, that the city inspector had not the power of removing the wardens under the authority derived from the ordinances of 1853, after the adoption of the revised ordinances in 1859.

The power of removal is also claimed for the city inspector, under section 21 of the amended charter of 1857, which provides that the heads of departments shall have power to appoint and remove the chiefs of bureaux and clerks in their respective departments. The revised ordinances continue the bureau of sanitary inspection and street cleaning, under the control of a chief, who is called the "superintendent of sanitary inspection." (*Valentine's Ord. chap.* 7, *art.* 3, § 31.) There are clerks named in this chapter whose duties are connected with the bureau of sanitary inspection, and the duties and direction of the health wardens are also there mentioned. (§ 44.) But the duties of the wardens are particularly defined in the act of 1850, and they are there subjected to the control and supervision of the city inspector. They are to be employed in carrying out the provisions of that act, the rules and regulations of the board of health, the laws and ordinances of the common council, and the laws of the state relating to the public health. For the purpose of carrying the act into effect, the mayor and the common council were declared to be the "Board of Health of the city of New York," when acting in relation to the public health of the said city, and the mayor is declared to be the president of such board. The wardens are appointed by virtue of this act, and are officials under the law creating the present organization of the board of health. They do not hold office under authority derived from the city charter. For these reasons, I am of the opinion that the health wardens are not subject to removal as clerks under the 21st section of the amended charter. There can be no ground for holding them to be heads of departments. If they were appointed as officers under the charter, there would be no difficulty, in my opinion, in holding that they were subject to removal under the

Bendit *v.* Annesley.

designation of clerks. A clerk is an "assistant," a "subordinate." (*Vide Worcester's Dictionary.*)

There could be no good reason for holding that the legislature intended that the city inspector might remove the chiefs of bureaux, but not a minor subordinate in the same department, because he was known by an official title different from that of a clerk.

I concur in affirming the judgment, with costs.

SUTHERLAND, J. concurred.

Judgment affirmed.

[NEW YORK GENERAL TERM, May 2, 1864. *Leonard, Clerke* and *Sutherland,* Justices.]